# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Gene Stockholm, Respondent.

Appellate Case No. 2016-000453

Opinion No. 27624
Submitted April 5, 2016 – Filed April 20, 2016

### DISBARRED

Lesley M. Coggiola, Disciplinary Counsel, and Julie K.
Martino, Assistant Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

Frank Anthony Barton, of West Columbia, for
Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
a definite suspension of nine months to three years, or disbarment, with conditions.
We accept the Agreement and disbar respondent from the practice of law in this
state.  The facts, as set forth in the Agreement, are as follows.

### FACTS

### Matter A

Respondent filed a summons and complaint on behalf of Client A.  Thereafter,
he performed no work on the case and did not enter into settlement negotiations.
After about a year, the case came up on the docket, at which time respondent
realized he never served the defendant with the summons and complaint, and the

statute of limitations had expired. Respondent filed a motion to dismiss the case pursuant to Rule 40(j), SCRCP, which was granted. Respondent told Client A the case had settled for $60,000. Respondent hoped to receive money in another case and give his earnings from that case to Client A.

Respondent's law partner met with Client A and explained he carried malpractice insurance. He also explained there was still time to file an action on behalf of Client A's daughter arising out of the same accident before the statute of limitations expired. However, Client A took her client file and hired other counsel. Respondent self-reported this matter to ODC. Respondent's law partner also reported the misconduct. Respondent's law partner subsequently discovered there were two other cases in which respondent had misled clients and allowed the statute of limitations to expire, and notified ODC of this discovery.

## Matter B

Respondent filed a summons and complaint on behalf of Client B and forwarded it for service, but never received an affidavit confirming service on the defendant. Respondent learned the process server was very ill and could not sign an affidavit of service. However, respondent did not attempt to re-serve the defendant and the statute of limitations expired. Respondent later fabricated a disbursement statement that indicated the total recovery from the defendant was $10,750. Of that amount, $3,250 was indicated to be for attorney's fees, $1,000 for medical costs, and $6,500 for Client B. Respondent went so far as to write a check to Client B for $6,500; however, the check was never cashed. Respondent anticipated receiving funds from another case and using his fee in that case to pay Client B.

Respondent's law partner met with Client B, who agreed to accept $3,000 from the firm. In exchange for that amount and negotiation of her medical bills, Client B signed a release of all claims arising from any case handled by the firm. Respondent's law partner paid Client B $3,000 out of firm funds.

## Matter C

Respondent filed a summons and complaint on behalf of Client C and began the discovery process. However, due to difficulty locating a witness and the need for more time to conduct depositions, opposing counsel requested the case be dismissed pursuant to Rule 40(j) in order to continue discovery. Respondent agreed and the case was stricken from the docket with the intent of restoring the case once the witness was located and depositions were completed. Respondent made some attempts to find

the missing witness, but missed the one year deadline for restoring the case to the docket. Respondent's law partner later paid Client C $1,000 and Client C signed a release discharging any claims arising from the firm's representation of him.

## Matter D

Respondent filed a lawsuit on behalf of Client D, but then requested the case be stricken from the docket pursuant to Rule 40(j). The one year time limit to restore the case to the docket expired without respondent filing a motion to restore. Respondent asserted he either calendared the deadline incorrectly or not at all. Respondent paid Client D $12,500 from his own earnings to compensate Client D for the missed deadline. In addition, Client D accepted $3,000 from respondent's firm in exchange for a release of all claims arising from the firm's representation of Client D.

## Matter E

Respondent was hired by Client E to bring a wrongful death action on behalf of Client E and her husband against the South Carolina Department of Social Services (DSS) based on the death of Client E's infant son in an in-home daycare. Respondent informed Client E he had handled similar cases in the past and therefore knew how to handle Client E's case. Respondent informed Client E the most that could be recovered in the case was $300,000 and respondent's fee was thirty percent of the amount recovered. Respondent showed Client E the complaint and noted the case could take a while because the defendant was a government agency.

Respondent informed Client E of two court dates, but on both occasions, told Client E her presence was not necessary. Respondent later informed Client E that the judge determined there was merit to the case and they should proceed with settlement negotiations. At one point, respondent informed Client E that DSS was offering to settle for $10,000. However, respondent also informed Client E that DSS often makes low offers to see if they can get desperate families to settle quickly, so Client E declined the purported offer and instructed respondent to ask for the maximum. Respondent later informed Client E that DSS offered $40,000, but Client E instructed respondent to request $150,000. However, thereafter, respondent told Client E that it was time to appear before a judge and the judge would most likely dismiss the case. Client E asked respondent to see if he could

get DSS to settle for $60,000, but if he could not, Client E would settle for $40,000. Respondent told Client E that $40,000 was DSS's final offer, which Client E agreed to accept.

Client E came to respondent's office to sign a release, at which time respondent told Client E not to speak to anyone about the settlement. He also informed Client E he would only take $10,000, instead of thirty percent, as his fee and the check would take a few weeks to arrive. Client E called several times to inquire about the money and respondent led Client E to believe it was forthcoming. However, respondent subsequently left Client E a voicemail stating he would not be continuing with the case and was leaving the practice of law. Client E called respondent's office and was connected to respondent's law partner, who informed Client E there was no settlement check. He further informed Client E the release she had signed was fabricated and that respondent never served DSS with a complaint. He apologized to Client E and advised her to retain a malpractice attorney with whom he would fully cooperate.

Once again, respondent claimed he thought the summons and complaint had been served, and that by the time he discovered the documents had not been served, the statute of limitations had run. As a result, respondent informed Client E the case had been settled when it had not. Respondent stated he intended to pay the settlement out of his own money, but was unable to do so.

Respondent also advised Client E to proceed with probate of her son's estate, which she did. The probate court wrote respondent on numerous occasions requesting information about the status of the litigation against DSS, but respondent never responded to the requests.

## LAW

Respondent admits that by his conduct he has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4 (a lawyer shall promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required, and explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; reasonably consult with the client about the means by which the client's objectives are to be accomplished; keep the client reasonably informed about the status of the matter; and promptly comply with reasonable requests for information); Rule 1.5 (requiring that fees be reasonable and be communicated to the client in a certain

manner, and setting forth the circumstances under which a contingent fee may be charged); Rule 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); Rule 8.4(d)(it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e)(it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

Respondent further admits his conduct constitutes grounds for discipline under Rule 7(a)(1), (5), and (6) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state.

Respondent shall, within thirty days of the date of this opinion, pay the costs incurred by ODC and the Commission on Lawyer Conduct in the investigation and prosecution of this matter.  If respondent seeks to be readmitted to the practice of law in the future, he must, within the year prior to filing a petition for readmission, complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School.  If readmitted, respondent shall, within thirty days of readmission, hire a law office management advisor who has been approved by the Commission on Lawyer Conduct; meet with the advisor within thirty days of hiring and assist the advisor in conducting a thorough review of respondent's office management practices, including, but not limited to, staff supervision, processing of legal matters, law office accounting, and communications with clients, opposing counsel and the courts, if applicable; and for a period of two years, meet with the advisor once every three months.   Failure to comply with any of these conditions or with the advisor's recommendations will constitute grounds for discipline under Rule 7(a)(3), RLDE.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**PLEICONES, C.J., BEATTY, KITTREDGE, HEARN and FEW, JJ., concur.**